Curia, per
Colcock, J.
In this case I shall pursue the order which has been observed in the argument on the different exceptions. We concur with the chancellor in the view which he has taken of the facts and in so much affirm the decree. It is true that there is great room to doubt as to some of them; but it is impossible for this court to weigh with scrupulous exactness the evidence which was given before the commissioner. Should we attempt to do so, we have no guarantee that we should approach any nearer to the justice of the case than the chancellor has done; for it must be obvious to every intelligent mind, that at every interval from the source of information the difficulty of ascertaining the truth is increased.
The two first objections may be considered together; for the reasoning on the facts, and the law on them, are equally applicable to both. As to the sum paid to Foote there can be no doubt; and though there may be some as to that paid to Chisolme, yet the most that can be *made the facts is, that there is oath against oath; and that certainly affords no ground to disturb the decision. But as to both, the defendant says the note of $2,500 contains all the advancements made by the intestate for him. And it appears that this note is of a date subsequent to the payment of all those sums, and made on a final settlement; and therefore affords strong evidence of the truth of *395 the defendant’s answer. Now it is said that this is matter in avoidance, and should have been proved by the defendant; but the law does not require that which is impossible. How could the defendant prove his assertion, except by his oath ? If there had been regular books kept between them as to these matters, it would have been susceptible of proof; but from the. nature of the transaction, and the relative situation of the parties, it was not to be expected that such clear and satisfactory evidence could be produced as might have been furnished in a matter of dispute between two merchants keeping regular books. The observations which have been made apply with equal force to the cotton charged; for if the testimony of Alíen De Graffen-reid be put out of the case, there is the oath of the defendant and the overseer against that of Mosley : and if admitted there would still be a preponderance in favor of the defendant; for a man may not consider himself bound to deny everything which he knows to be untrue, that is stated in his presence. If he does so when called on his oath, and that oath is not disproved, the bare circumstance of his not having denied it before, is not sufficient to discredit him.
On the fifth exception, which relates to the horse and gig, I -would remark, that it is not always clear what shall be considered as an advancement. Much depends on circumstances. I cannot but think that the same article of property, given under different circumstances, might be differently viewed in this respect. Thus a *horse given a farmer of limited to one of his for the pose of agriculture, may be considered as an article of use and necessity, and therefore, regarded as an advancement; while another horse, given by a wealthy man to his daughter, to be driven in a carriage, would be considered as an article of mere luxury, like a gold watch or ring, and not to be charged as an advancement. Is it reasonable to suppose that the intestate in this case would have so considered the and horse ? I think not.
On the subject of the note for 82,500, I can perceive no difficulty. It is brought into the account by the executor with apparent fairness; and if there was any other note due by him to the testator, it is certain that no evidence has been offered to prove it. I think the vague and slight suspicions which seem to have been indulged on the subject are sufficiently removed by the production of the certificate of the intestate. That the interest should have been charged on the note, is admitted by the defendant’s solicitor, and must be taken into the account. On the subject of interest generally, it is the opinion of my brethren, that the executor must be charged with it from the time of receiving the different sums of money to the commencement of this suit; and for all sums since received, with the interest thereon received.
On the question of commissions, the court are unanimously of opinion that the executor is not entitled to them. He voluntarily undertook the duty under the express stipulation that he would not charge them; and he cannot now be permitted to violate that contract. That which was expressly declared to have been intended as a gratuity shall not now be converted into a demand.
The last question raised in this case is by no means free from difficulty. How the property which is brought *into hotchpot is to be estimated does not seem to be determined. The great object *396 of our statute was to produce equality among the children of a deceased person : and it has been contended, that the equality is to have relation to the time of the death ; because then the estate is to be divided, and then the property valued. But this is an incorrect view of the subject, and one which could not be carried into operation. There might arise many objections to its practical operation, such as the loss of the property before the death of the ancestor, or the disposition of it by the child advanced. The true intention of the law is, that the estate of the ancestor is to be considered as a common fund, out of which each child is to draw at the death an equal proportion. That part of the estate which has been given is to be estimated at what it is worth at the death, relation being had to its situation at the time of the gift. Thus a father gives to one of his sons a healthy negro boy of twelve years of age, and ten years after the gift the father dies. If this boy be brought into hotchpot, his value will be estimated as that of a boy twelve years old; and whatever such a boy would then bring, the child is to be charged with as an advancement. The increased value of the property given which arises from improvement is expressly excluded by our act, which constitutes an important difference between it and the statute of Charles. The clause of our act is, “In case any child, or the issue of any child wdio shall have been so advanced, shall not have received a portion equal to the share which shall be due to the other children (the value of which portion being estimated at the death of the ancestor, but so as that neither the improvement of the real estate by such child or children nor the increase of the personal property shall be taken into the computation,) then so much the estate of the intestate shall be distributed to such *child or issue, as shall make the estate of all the children equal.”
As to the claim of the defendant to any portion of the improved value of the estate since the death, that of course must depend on his claim to any part of the capital of the estate. The rights of the parties are fixed at the death of the ancestor. If, therefore, on taking the final account, it shall appear that the defendant’s advancements do not place him on a footing of equality with the other children, he will of course, be entitled to receive from the capital of the estate such a sum as will produce that equality, and, consequently, a proportionate share of the increase, or profit, which has arisen since the death. The decree of the chancellor is, therefore, so modified as to meet this view of the case, and an account to be accordingly taken. The crop of 1821 has not been divided, and, of course, is to be taken into the account.

Decree modified.